IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RICHARD TREVINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:07-CV-0177 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff RICHARD TREVINO brings this cause of action pursuant to Title 42 section 405(g)

of the United States Code seeking review of a final decision of defendant MICHAEL J. ASTRUE,

Commissioner of Social Security (Commissioner), denying his application for disability insurance

benefits and supplemental security income benefits. Both parties have filed briefs in this cause. For

the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEDURAL HISTORY

In 1990, when he was twenty-five years old, plaintiff was awarded benefits for disability

commencing in 1989 due to a seizure disorder. (Transcript [hereinafter Tr.] 22). During the

disability review process, the Commissioner determined the disability ceased in December 2004,

when plaintiff was thirty-nine years old. (Tr. 63). This determination was affirmed on

reconsideration. (Tr. 43). Plaintiff appealed, and on September 29, 2006 an administrative law judge (ALJ) found plaintiff's disability ceased in December of 2004. (Tr. 17). Trevino requested the Appeals Counsel review the ALJ's determination. (Tr. 6). After review, the Appeals Counsel affirmed the ALJ's decision. (Tr. 3). Trevino has now filed suit in federal district court challenging the Commissioner's actions.

## II.
## ISSUES PRESENTED

In his brief in support of his claim for social security benefits, plaintiff contends the following:

1. The Secretary's decision that plaintiff's disability ceased in December 2004 was not supported by substantial evidence.

2. The ALJ erred by proceeding with the hearing despite plaintiff's failure to knowingly and intelligently waive his right to counsel.

## III.
## STANDARD OF REVIEW

Under Title 42 section 423(f)(1) of the United States Code, benefits previously granted may be terminated if the physical impairment which justified the award of benefits ceases to be disabling. Before terminating disability benefit payments, the Secretary must find, based on substantial evidence, that there has been "medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and [that] the individual is now able to engage in substantial gainful activity." 42 U.S.C. 423(f)(1).

Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the court must weight four elements of proof : (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff's disability had not improved is not the issue. The ALJ did not do this, and the case comes to this Court with the issue limited to whether there was substantial evidence to support the ALJ's decision.

IV.
MERITS

A. *Substantial Evidence to Support Termination of Benefits*

Plaintiff initially contends the Secretary's decision that disability ceased in December 2004 was not supported by substantial evidence. The record reflects plaintiff's long history of seizure disorder. When an ALJ initially granted plaintiff benefits in 1990, he found plaintiff Trevino was

experiencing seizures anywhere from twice a week to several times a day. Plaintiff's seizures varied in severity–some resulted in full loss of consciousness with falling, thrashing, and foaming at the mouth while others resulted only in plaintiff's mind wandering off. (Tr. 20). The longer seizures would last for approximately forty-five minutes, while the lesser ones lasted for approximately twenty minutes. (Tr. 20-21). Testimony at the hearing reflected plaintiff was rendered incapable of functioning both during any seizure and for approximately one hour afterwards. (Tr. 21). Plaintiff was experiencing frequent seizures despite compliance with prescribed treatments, which consisted of taking several pills each day. (Tr. 20-21). At a disability evaluation on November 15, 1999, plaintiff reported having at least two or three seizures per week, despite taking prescribed medications. (Tr. 82)

In contrast, notes of plaintiff's treating physician show plaintiff's condition improved greatly from 1999 to 2005. Plaintiff visited his neurologist, Dr. Michael Ryan, only six times in a five-year period. On the first of the visits documented in the record, which occurred May 10, 2000, Dr. Ryan's notes say, "Patient returns. He has not had any seizures since I last saw him. Apparently it has been a number of years since he has had a seizure. It has been more than 2 years since I have seen him." (Tr. 112). At this May 2000 visit, Dr. Ryan's assessment was that plaintiff's seizure disorder was well controlled. Plaintiff was scheduled to return for a check up in one year's time. (Tr. 112). On November 14, 2001, plaintiff returned and Dr. Ryan's notes say, "He believes he had 2 brief seizures in the past year. These occurred when he stopped taking the Neurotin. He ran out of them. He apparently didn't call to get more." (Tr. 112). Dr. Ryan assessed plaintiff as having well controlled seizure disorder. (Tr. 112). The doctor indicated plaintiff would "let them know if he has any partial seizures or seizures at all on his current dose." (Tr. 112).

Aside from a follow-up phone call the next day, there was no contact between plaintiff and his doctor for approximately three years. Other than the above, the Court has not found, and plaintiff has not cited, any evidence in the record that plaintiff sought treatment for or complained of having any seizures during this time period. At the next doctor's visit, however, on September 22, 2004, plaintiff complained to Dr. Ryan about having seizures. Dr. Ryan's notes say,

> It sounds like he is having some [seizures] in his sleep. He said he stopped the Neurontin sometime ago. It is not clear when he stopped it. Apparently he just ran out of it. Seizures sound complex partial. He will get a warning of an electric feeling that goes up from his abdomen into his chest. He will then have a dazed look and will stiffen with his left arm. It sounds like he is having around a couple a week.

(Tr. 111). At this visit, the doctor diagnosed plaintiff as having a seizure disorder that was not well controlled and started plaintiff on a new seizure medication. (Tr. 111). Approximately one month later, on October 27, 2004, plaintiff returned to the doctor, who stated, "No seizures. No problems with the medicine. He is doing well," and said plaintiff's seizure disorder was "again well controlled." (Tr. 111). In December 2004, the Secretary terminated plaintiff's Social Security benefits.

As had been scheduled, approximately three months after the October 27, 2004 visit, plaintiff returned to Dr. Ryan. During the three month time period between visits, plaintiff reported to his doctor having had one seizure. Dr. Ryan's notes say, "His mother described him as going blank for about 30 seconds. He kind of bent forward some. He didn't respond. He was confused afterwards. He says he gets a warning of an electric feeling going from his abdomen up to his brain." (Tr. 110). Plaintiff returned to Dr. Ryan three months later, on April 27, 2005. At that appointment, plaintiff reported having one seizure, in April. (Tr. 108). Dr. Ryan stated, "It was one of his typical seizures. It lasted about 30 seconds." (Tr. 108).

The facts set out above are the whole of the more recent medical records contained in the administrative record. Plaintiff presented no additional medical evidence supporting his claim of disability, but at the hearing, plaintiff testified the medication prescribed by Dr. Ryan, his treating physician, was not effective. (Tr. 128). He additionally testified he was having between two and three seizures a month, and that the seizures struck with no warning. (Tr. 128). Plaintiff's mother testified at the hearing that her son had two to three seizures per month, each lasting approximately thirty seconds. (Tr. 131). She stated that after the seizures, plaintiff does not lie down to nap, but is simply momentarily confused. (Tr. 131-32).

In addition to his testimony, plaintiff reported in a "Daily Activity Questionnaire" on November 16, 2004, that he would experience seizures anywhere from three to four times a day to one every two to three weeks. (Tr. 86). He also stated at the hearing and in a Daily Activity Questionnaire that he is an unpaid lay minister at the local jail. (Tr.88). Finally, plaintiff stated he had one seizure in October 2004 and several in September 2004. (Tr. 89). On another questionnaire filled out by the plaintiff in February 2005, when asked to give the dates of the last six seizures, plaintiff's response was "October 2004, December 2005."[1]

The record contains two physical residual functional capacity assessments completed by two different doctors, who were not treating physicians. These reports indicate plaintiff had no apparent exertional, manipulative, visual, or communicative limitations and was only limited insofar as he could not work at unprotected heights, in situations where he would be required to balance, or with dangerous equipment. (Tr. 97, 104).

---

[1] The court assumes plaintiff meant December 2004.

A vocational expert testified at hearing. The ALJ presented the following hypothetical to the expert:

> A younger individual with a high school education. No past relevant work but who has an RFC such as to restrict him from - - so as to take into account the typical seizure precautions in the workplace. Across the board, what jobs exist that would take into account this non-exertional limitation?

(Tr. 133). To this, the expert responded that the positions of janitor, dishwasher, and small products assembler would all be within the capacity of such a person to perform. (Tr. 133).

Given the fact that the only evidence plaintiff remained under a disability was his testimony at the hearing and his answers to Social Security disability review questionnaires, the Court cannot find the ALJ committed reversible error in determining that plaintiff's disability ceased. There was no objective medical evidence supporting plaintiff's testimony. To the contrary, the medical reports of plaintiff's own treating physician was that plaintiff reported having approximately one seizure every three months, which lasted approximately thirty seconds and had no major aftereffect on plaintiff's behavior. It was only in connection with retaining or re-attaining his Social Security benefits that plaintiff reported having more seizures than he had earlier reported to his doctor.

This finding is in contrast to the much more frequent and violent seizures plaintiff was suffering when first granted disability benefits. Although the evidence is in conflict, there was substantial evidence supporting the ALJ's determination that plaintiff's disability had ceased. *See Wren*, 925 F.2d at 126. In fact, most of the evidence supporting the ALJ's decision came from plaintiff's treating physician. *See* 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)."). Plaintiff's first contention is without merit.

## B. Plaintiff's Right to Counsel at the Hearing

In his second point, plaintiff contends the ALJ erred by proceeding with the hearing despite plaintiff's failure to knowingly and intelligently waive his right to counsel. "The Supreme Court has never recognized a constitutional right to counsel at an SSA hearing." *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992). However, a plaintiff may have an attorney present if he or she so chooses, and "[a] claimant is entitled to adequate notice of [the] right to counsel at a hearing before an ALJ." *Castillo v. Bernhart*, 325F.3d 550, 552 (5th Cir. 2003); 42 U.S.C. § 406. That right may be waived. The Fifth Circuit has held that when a claimant has received numerous written notices of his right to counsel and the ALJ has admonished the claimant of this right at the beginning of the hearing, the claimant has validly consented to proceed without representation. *Id.* Even if a claimant does not validly waive his right to counsel, the claimant must demonstrate to the court that "he was prejudiced due to the absence of counsel at the hearing." *Id.* (citing *Brock v. Chater*, 84 F.3d 726, 729 n. 1 (5th Cir. 1996)). When a claimant is not represented by counsel at the hearing, "the ALJ [is] under a heightened duty to scrupulously and conscientiously explore all the relevant facts." *Id.* at 552-53. Plaintiff does not contend that the ALJ failed to meet this heightened requirement.

Plaintiff contends the ALJ was under a duty to tell him, at the hearing of, "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to 25% of the past due benefits and the required court approval of fees." (Plaintiff's Brief in Support of Claim for Social Security Benefits, pg. 9). The caselaw upon which plaintiff relies to support this point, however, mandates only that a claimant be notified of his right to counsel, not that the ALJ do so at the hearing. *See Clark v. Schweiker*, 652

F.2d 399, 403 (5th Cir. 1981).

The record in this case contains at least two notices of the right to counsel sent to the plaintiff prior to the hearing. Both notices stated,

> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal . . . If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

(Tr. 27, 33). This notice meets the requirements outlined in the case law cited by plaintiff. *See Clark*, 652 F.2d at 403. While the better practice would have been for the ALJ to personally admonish plaintiff of his right to counsel and ensure he was validly waiving his right to counsel, such is not required in view of the other notices plaintiff received and his prior experiences, and the failure of the ALJ to do so does not constitute reversible error.

Assuming, *arguendo*, that plaintiff did not validly waive his right to counsel, he presents no evidence or analysis showing how an attorney would have changed the ALJ's determination. The ALJ was under a special duty to conduct a full and fair hearing for the unrepresented plaintiff. *See Clark*, 625 F.2d at 404. While the thirteen-minute hearing was admittedly brief, the ALJ asked a series of questions that the Fifth Circuit has regarded as necessary to satisfy the ALJ's heightened duty to develop the record. *See Castillo*, 325 F.3d at 553. In any event, even when told that he could offer more evidence supporting his disability claim, plaintiff has never (even to this Court, when he is represented by counsel) offered any medical evidence contradicting the evidence in the record showing he is no longer disabled by his seizure disorder.

Plaintiff appears to argue that the lack of a cross-examination of the vocational expert

prejudiced him. (Plaintiff's Brief in Support of Claim for Social Security Benefits, pg. 10). Specifically, plaintiff contends that an attorney would have adduced evidence, such as further information on how a seizure disorder would affect a person's ability to perform the jobs recommended by the expert, that might have altered the ALJ's determination. (*Id.*). When the ALJ presented the vocational expert with the hypothetical, however, he told the expert to "take into account the typical seizure precautions in the workplace," and the ALJ recognized the limitations of plaintiff's age, education, and past relevant work experience. (Tr. 133). The vocational expert had therefore already considered the fact that plaintiff has seizures when he made his recommendations. Plaintiff additionally states that an attorney could have made contact with his treating physician to determine whether there was any level of improvement in plaintiff's condition. (Plaintiff's Brief in Support of Claim for Social Security Benefits, pg. 11). All of the treating physician's notes were admitted into the record at the hearing, and in those the doctor clearly indicated the seizure disorder was well controlled. Plaintiff speculates that an attorney could have adduced mitigating testimony, but fails to support any of those speculations with evidence. Indeed, all evidence in the record indicates such speculations are not well-founded. Plaintiff cannot demonstrate how he suffered any prejudice by not being represented by counsel at the hearing. His second contention is without merit.

All of plaintiff's arguments are based on nothing more than his own, subjective complaints and theorizing about testimony that has absolutely no basis in the record. These alone are insufficient to warrant overturning the Commissioner's decision. *See* 20 C.F.R. § 1528(a) ("Your statements alone are not enough to establish that there is a physical or mental impairment."); *Wren*, 925 F.2d at 128 (stating a claimant must provide sufficient medical evidence to establish a physical

or mental impairment); *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (holding that subjective evidence of a claimant's disability "will not take precedence over conflicting medical evidence").

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff not disabled and not entitled to disability benefits be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of September, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).